UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

Civil Action No.3:06-CV-00178

| | |
|---|---|
| RHONDA C. DAVIS,<br><br>                      Plaintiff,<br><br>    Vs.<br><br>TRANS UNION LLC, and<br>STERLING & KING, INC.,<br><br>                      Defendants. | |

**DEFENDANT STERLING AND KING, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT AND MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, PERSONAL JURISDICTION, INSUFFICIENT PROCESS INSUFFICIENT SERVICE OF PROCESS, AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Defendant Sterling & King, Inc. ("Sterling & King"), by and through counsel, submits this memorandum of law in support of its Motion to Set Aside Entry of Default. Primarily, Sterling & King seeks to have the Entry of Default set aside because Plaintiff Rhonda C. Davis ("Plaintiff") never obtained valid service on Sterling & King, and therefore the Entry of Default is void. In the event the motion is granted, Sterling & King requests the Court to dismiss Plaintiff's Complaint for numerous reasons, including:

- Plaintiff's process and attempted service of process were defective, thereby precluding this Court from exercising personal jurisdiction over Sterling & King; and

- Plaintiff's allegations are not sufficiently alleged so as to state valid causes of action, thereby precluding this Court from having subject matter jurisdiction over the claims attempted by Plaintiff.

1

## STATEMENT OF THE CASE

Plaintiff instituted the present action on March 8, 2006 by filing a summons and complaint in the North Carolina General Court of Justice, Superior Court Division, for Mecklenburg County, alleging against the defendants various unfair and wrongful credit reporting and debt collections practices. On April 13, 2006, Defendant Trans Union LLC removed the state court action to the United States District Court for the Western District of North Carolina. Prior to the removal, Plaintiff had not effected valid service on Sterling & King, and the notice of removal was not served on Sterling & King. On or about April 21, 2006, Plaintiff deposited the state court summons and state court complaint with Federal Express and attempted service on Sterling & King. Sterling & King received the state court summons and complaint by Federal Express on April 24, 2006. No federal court summons has ever been issued against Sterling & King in this action.

Despite the action having been removed, Plaintiff, on May 2, 2006, filed an Affidavit of Service with the Mecklenburg County Superior Court, showing that she obtained service by Federal Express on April 24, 2006. (Exhibit 1).[1] Perhaps recognizing at some point that the state court was without jurisdiction, Plaintiff, on May 26, 2006, filed a nearly identical Affidavit of Service with this Court, also alleging that she served Sterling & King via Federal Express on April 24, 2006. In neither affidavit did Plaintiff did state whether a federal summons had been issued and served on Sterling & King. Indeed, no federal summons had been issued and served.

On June 20, 2006, Plaintiff moved for an Entry of Default against Sterling & King, incorrectly representing to the Court that the action had been removed on April 24, 2006. On June 21, 2006, despite Sterling & King's never having been served with the state court summons

---

[1] Exhibits 1 through 4 are those attached to Sterling & King's motion, filed contemporaneously herewith. Nonpublished decisions cited herein at Exhibits A through G are attached hereto.

prior to removal, and despite never having been served with a federal court summons after removal, an Entry of Default was entered against Sterling & King. For the reasons stated herein, Sterling & King now seeks to set aside the Entry of Default and to dismiss Plaintiff's Complaint.

## STATEMENT OF FACTS

The present litigation instituted by Plaintiff against Sterling & King is not the first. In reality, it arises from a suit filed by Plaintiff on November 7, 2003 in the North Carolina General Court of Justice, Superior Court Division, for Mecklenburg County. In that lawsuit, Plaintiff alleged, among other things, unfair collections and credit reporting practices with regard to a debt allegedly owed by Plaintiff. (Exhibit 2). That lawsuit was resolved, and the settlement provided that Sterling & King would cease all collections activities against Plaintiff and close her account. (Affidavit of Jim Milligan, Exhibit 3, para. 3). Sterling & King did so. (Exhibit 3, para. 4).

In July, 2004, however, Plaintiff's counsel notified Sterling & King that Plaintiff's credit report reflected an outstanding balance due and owing to Sterling & King. (Exhibit 3, para. 5). Responding to Plaintiff's counsel's request that the information be corrected, Sterling & King, despite being under no requirement to do so under the settlement agreement, promptly took steps to have the debt removed from Plaintiff's credit report. (Exhibit 3, para. 6). Despite Plaintiff's efforts, the debt for some reason was at one point re-listed by Trans Union, a major consumer credit reporting bureau.

Plaintiff filed the present action on March 8, 2006 alleging that Sterling & King and Trans Union violated the federal Fair Credit Reporting Act ("FCRA"). Plaintiff also alleges that Sterling & King violated federal and state debt collection statutes and committed defamation.

Plaintiff also seeks declaratory and injunctive relief that the debt is not owed and should not be collected and/or reported.

**ARGUMENT**

Sterling & King seeks to set aside the Entry of Default on the grounds that Plaintiff never effected valid service on Sterling & King, and therefore the Court had no jurisdiction to enter the default. In the event the Entry of Default is set aside, Sterling & King seeks to have Plaintiff's Complaint dismissed. As no federal summons was ever issued and no valid service was ever accomplished, Plaintiff's process and service of process were defective, and this Court lacks personal jurisdiction over Sterling & King. Moreover, Plaintiff's allegations against Sterling & King are not sufficient so as to state a valid cause of action, and therefore the complaint must be dismissed pursuant to Rule 12(b)(6).

**A.     The Entry Of Default Must Be Set Aside.**

1.     Standards For Setting Aside An Entry Of Default.

When a state court lawsuit is removed to federal court prior to a co-defendant's having been served by the plaintiff with the summons and complaint, 28 U.S.C. § 1448 provides that "such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court." 28 U.S.C. § 1448. "Once a case has been removed from state court, the federal court applies the Federal Rules of Civil Procedure and the case is treated as though it were originally commenced in federal court." Motsinger v. Flynt, 119 F.R.D. 373, 377 (M.D.N.C. 1988). Important for the present case is that if a state court summons has not yet been served prior to removal, "it is void and plaintiff must obtain a federal summons and serve it." Id., n.2. See also Maxwell v. National Gypsum Company, 2003 U.S. Dist. LEXIS 7367, * ____ (W.D.N.C. April 2, 2003) ("a Plaintiff in a removal case can no longer seek a State court

4

summons to correct any imperfections in service. He must seek a summons from the District Court.") (attached hereto as Exhibit A). Addressing this principle, the United States Court of Appeals for the Ninth Circuit has stated:

> where the defendant has never been put on notice of the state court proceeding prior to removal . . . the federal court cannot "complete" the state process by permitting it to be served after removal; rather the federal court must issue new process pursuant to Rule 4 of the Federal Rules of Civil Procedure. <u>The state court process becomes null and void on the date the action is removed to the federal court</u>.

<u>Beecher v. Wallace</u>, 381 F.2d 372, 373 (9th Cir. 1967) (citations omitted) (emphasis added).

An entry of default may be vacated for failure of service of process. <u>Combustion Systems Sales, Inc. v. Eastern Metal Products and Fabricators, Inc.</u>, 112 F.R.D. 685 (M.D.N.C. 1986). Such grounds for vacating the entry of default create in this Court a nondiscretionary duty to grant relief from the default judgment and dismiss the case. <u>Thos P. Gonzalez v. Consejo Nacional De Produccion De Costa Rica</u>, 614 F.2d 1247, 1256 (9th Cir. 1980). <u>See</u> <u>also</u> <u>Armco, Inc. v. Penrod-Stauffer Building Systems, Inc.</u>, 733 F.2d 1087, 1089 (4th Cir. 1984) (the United States Court of Appeals reversed a district court order denying relief from judgment under Rule 60(b)(4), stating that "[s]ince there was no valid service of process, the district court was without jurisdiction of the defendant, and the default judgment was void").

In addition to the aforesaid grounds for setting aside an entry of default, an entry of default may be set aside upon a finding of good cause. The following factors are relevant for determining whether good cause exists: "(1) whether the default was willful; (2) whether the defaulting party presents meritorious defenses; and (3) whether the nondefaulting party will be substantially prejudiced if relief from the default is granted." <u>Combustion System Sales</u>, 112 F.R.D. at 690. Because default judgments are disfavored, "courts should liberally exercise their

5

discretion to provide relief from entries of default." Id. "Any doubts in granting relief from the default have been resolved in favor of the defaulting party." Id. at 691.

2.  The Entry Of Default Must Be Set Aside As It Is Void As A Matter Of Law.

As shown by the affidavit of Jim Milligan, a Recovery Manager of Sterling & King, Sterling & King was not served with the state court action prior to the removal by Trans Union on April 13, 2006. (Exhibit 3, para. 8, 9). Moreover, the Federal Express delivered on April 24, 2006, **after the case had been removed to federal court**, contained a copy of the state court complaint and the summons issued by the Mecklenburg County Superior Court. (Exhibit 3, para. 9). No federal court summons has ever been served on Sterling & King in this action, and indeed a review of the docket reveals that none has ever been issued. As a matter of law, Plaintiff's attempts after the removal to serve Sterling & King with the state court summons were defective. Consequently, the Entry of Default based upon such attempted service is void as a matter of law and must be set aside.[2][3]

3.  Good Cause Also Exists For Setting Aside The Entry Of Default.

Even if the attempted service were somehow effective and the Entry of Default is not void as a matter of law, good cause nonetheless exists for setting it aside, as evidenced below.

   a.  *The default was not willful.*

On April 12, 2006, nearly two weeks before Sterling & King's receipt of the state court summons and complaint, Kasey Ratliff ("Ratliff"), an attorney for Trans Union, notified Jim

---

[2] Even if a Notice of Removal could somehow put a co-defendant on formal notice of a lawsuit, which is disputed, there is no evidence that the notice in this case was even served on Sterling & King. Indeed, the evidence is to the contrary. Jim Milligan declares that the notice was not served on Sterling & King. (Exhibit 3, para. ____). In fact, the certificates of service for the notice of removal and the notice of filing of the notice of removal fail to include Sterling & King.

[3] While purely conjecture, perhaps one explanation for why the Entry of Default was improperly entered is that Plaintiff's Motion for Entry of Default filed on June 20, 2006 incorrectly recited that the action had been removed on "April 24, 2006." Therefore, it would have appeared that Sterling & King might actually have been served with the state court summons prior to the removal. However, the removal occurred on April 13, 2006, eleven days before Sterling & King was purportedly served.

Milligan that a lawsuit had been filed.[4] (Exhibit 3, para. 8). During the conversation, Milligan informed Ratliff that Sterling & King had not yet been served with the lawsuit. (Exhibit 3, para. 8). Ratliff stated to Milligan that Trans Union would be removing the action to federal court in the near future. (Exhibit 3, para. 8). Milligan then waited to be served with the state court case and to receive some notification of the removal. (Exhibit 3, para. 9).

On April 24, 2006, Milligan received, by Federal Express, a copy of the state court summons and complaint. Milligan did not understand this to be valid service, as there are no provisions for service by Federal Express in Florida, where he is located. See Fla. R. Civ. P. 1.070. In fact, Florida Rules of Civil Procedure require personal service and do not provide for service by mail, unless an acceptance of service is given or service is formally waived. Fla. R. Civ. P. 1.070. Moreover, Sterling & King never received any indication from Plaintiff that this was valid service, as neither the affidavit of service filed by Plaintiff with the Mecklenburg County Superior Court on May 2, 2006 nor the affidavit filed with this Court on May 26, 2006 were mailed to Sterling & King.

Moreover, Sterling & King had been informed by Ratliff that Trans Union would remove the state court case to federal court. Milligan expected some kind of formal notice that the case had indeed been removed, but none ever came. The notice of removal was not served on Sterling & King. (Exhibit 3, para. 11). The certificates of service on the notice of removal and the notice of filing of the notice of removal do not include Sterling & King. The first notice Sterling & King ever received that the case had been removed was the Entry of Default it received on or about June 22, 2006. This was also the first notice Sterling & King ever received that anyone believed the attempted service on April 24, 2006 was valid.

---

[4] Presumably, this means that Trans Union had been served with the state court suit at that time.

After receiving a copy of the Entry of Default, Sterling & King promptly contacted an attorney. (Exhibit 3, para. 13). Poyner & Spruill, on behalf of Sterling & King, left a message for Plaintiff's attorney on June 23, 2006 requesting that the Entry of Default be set aside. (Affidavit of Deborah Tyson, Exhibit 4, para. 1). After exchanging messages over the course of four days, counsel for the parties spoke with one another on June 27, 2006, at which time Plaintiff's counsel said he would speak with his client about whether to set aside the Entry of Default. (Exhibit 4, para. 2). On July 7, 2006, Sterling & King's counsel left a message for Plaintiff's counsel in an attempt to determine whether Plaintiff would consent to setting aside the Entry of Default. (Exhibit 4, para. 3). Plaintiff's counsel informed Poyner & Spruill on July 13, 2006 that Plaintiff would not consent to setting aside the Entry of Default. (Exhibit 4, para. 4). On July 14, 2006, Poyner & Spruill wrote Plaintiff's counsel a letter setting forth their meritorious defenses, explained below, and again requested that the Entry of Default be vacated. (Exhibit 4, para. 5). On July 24, 2006, Poyner & Spruill received a response from Plaintiff's counsel indicating that Plaintiff's decision had not changed. (Exhibit 4, para. 6).

By all accounts, Sterling & King was not willful in its default, and Sterling & King has acted diligently.

  *b.*  *Sterling & King has meritorious defenses.*

Another reason to set aside the Entry of Default is that Sterling & King has meritorious defenses to Plaintiff's claims. "[A] proffered defense may be considered meritorious if there is even a hint or suggestion that it will be a complete defense if proven." <u>United States of America v. Eastern Metal Products and Fabricators, Inc.</u>, 112 F.R.D. 685, 691 (M.D.N.C. 1986). "The Fourth Circuit has stated that all that is necessary to establish the existence of a meritorious defense is a proffer of evidence which, if believed, would permit the court to find for the

8

defaulting party." Willis v. MCI Telecommunications, 177 F.R.D. 350, 350-51 (E.D.N.C. 1998) (quoting Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988)).

In July, 2004, in response to a request from Plaintiff's counsel, Sterling & King, which had ceased all collection activities, internally changed Plaintiff's alleged debt to "CCT," meaning "closed client terminated." (Exhibit 3, para. 6). Through the following May, Sterling & King reported the debt to credit bureaus as "DA," meaning a deleted account. (Exhibit 3, para. 6). For whatever reason, though, through no fault of Sterling & King, Trans Union at some point began incorrectly reporting Plaintiff's alleged debt as open.

Taking these facts in a light most favorable to Sterling & King, they, if believed, reveal that Sterling & King has a meritorious defense to Plaintiff's claims, because Sterling & King did everything it was supposed to have done pursuant to its agreement with Plaintiff and the requests of Plaintiff's counsel. They even went above and beyond what was required, because they reported the account as CCT and DA to the major credit bureaus, something which was not required of them by the settlement agreement. Additionally, despite the allegations in the complaint, Sterling & King in no way willfully or maliciously reported any false information to Trans Union or any third party. (Exhibit 3, para. 15).

Sterling & King also has other defenses. Plaintiff's complaint, for example, is based in part on alleged conduct by Sterling & King in 2004 and even 2005. The Fair Debt Collections Practices Act contains a one-year statute of limitations, thereby barring Plaintiff's claims under the Act. See 28 U.S.C. § 1692k(d). Additionally, Plaintiff's claim for defamation may be preempted by the Fair Credit Reporting Act. See 28 U.S.C. § 1681t(b)(1)(F). Finally, as explained below, Plaintiff's claims do not sufficiently state valid causes of action.

9

All of the aforesaid defenses weigh in favor of setting aside the Entry of Default.

  c. *No prejudice will result if the Entry of Default is set aside.*

In considering whether setting aside an entry of default will prejudice the plaintiff, it is important to consider that "[d]elay alone is not a sufficient basis for prejudice . . . ." United States of America v. Eastern Metal Products and Fabricators, Inc., 112 F.R.D. 685, 691 (M.D.N.C. 1986). Rather, prejudice "may result from loss of evidence, greater difficulty in discovery or trial, or opportunity for fraud and collusion." Id. Given that merely three months have passed since the filing of the state court action, and that Sterling & King has acted promptly in attempting to set aside the Entry of Default, it is hard to imagine how any prejudice might result to Plaintiff if the Entry of Default is vacated. "Very little expenditure of either the court's or the parties' resources is involved in having the clerk make an entry of default." Id. at 690. Therefore, the lack of any foreseeable prejudice to Plaintiff is yet another reason for setting aside the Entry of Default.

**B.** **Plaintiff's Complaint Must Be Dismissed.**

  1. Lack Of Personal Jurisdiction, Ineffective Process, And Ineffective Service Of Process.

In the event this Court sets aside the Entry of Default on the grounds that valid service was not effected, Plaintiff's Complaint must be dismissed for lack of personal jurisdiction, ineffective process, and ineffective service of process. "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed.R.Civ.Pro. 4 . . . . [W]ithout substantial compliance with Rule 4 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.'" Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc., 840 F.2d 685, 688 (9th Cir. 1988) (citations omitted). See also Choice Hotels Internat'l Inc. v. Bonham, 125 F.3d 847, 1997 U.S. App. LEXIS 26909, *4 (4th Cir.

10

September 9, 1997) ("Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction") (attached hereto as Exhibit B). "Moreover, it is well recognized that a 'defendant's actual notice of the litigation . . . is insufficient to satisfy Rule 4's requirements.'" Mid-Continent Wood Products, Inc. v. Harris, 936 F.2d 297, 301 (7th Cir. 1991). See also China Mariners' Assurance Corp. v. M.T. W.M. Vacy Ash, 1999 U.S. Dist. LEXIS 2674, *25 (S.D.N.Y. March 3, 1999) ("Actual notice does not cure defective or unproven service, and so the default judgment must be set aside") (attached hereto as Exhibit C).

Based on the foregoing, it is clear that one of the prerequisites to a federal court's exercise of personal jurisdiction over a defendant is effective service of process. As demonstrated above, Plaintiff failed to serve Sterling & King with valid process, instead delivering to it a state court summons that was null and void in light of the removal. Therefore, the action must be dismissed.

    2.    Plaintiff's Complaint Fails To Sufficiently Allege A Valid Cause Of Action.

In addressing a motion made pursuant to Rule 12(b)(6), the Court must accept the factual allegations of the Complaint as true. GE Investment Private Placement Partners II v. Parker, 247 F.3d 543 (4th Cir. 2001). Dismissal is proper if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. at 548. The Fourth Circuit has held that "the test of the adequacy of the pleadings is whether the adversary has sufficient notice of the pleader's claim so that he can prepare responsive pleadings or prepare for trial." Harris v. Angliker, 1992 U.S. App. LEXIS 1542 (1992) (attached hereto as Exhibit D). While facts must be accepted as alleged, such deference does not extend to bald assertions, conclusory allegations or legal conclusions. Migdal v. Rowe Price-Fleming Int' l, Inc., 248 F.3d 321, 326 (4th Cir. 2001). Moreover, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a motion to dismiss. Id. ("[t]he

11

presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion").

A plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim is properly dismissed when he sets forth conclusory allegations and fails to allege any particular conduct of a defendant that could be found to violate the FDCPA. See, e.g., Havens-Tobias v. Eagle, 127 F. Supp. 2d 889 (S.D. Ohio 2001). Where the alleged FDCPA violations fail to provide notice to the defendant as to how the defendant violated the FDCPA, and merely tracks the language of the statute, the complaint must be dismissed. Asel v. Price, 3:02CV53 (W.D.N.C., June 18, 2002) (a plaintiff cannot simply make "conclusory statements which appear to track the language of the FDCPA and assert that violations have occurred") (attached hereto as Exhibit E). See also Nix v. Welch & White, P.A., 2001 U.S. Dist. LEXIS 10364 (D. Del. 2001) (in order for FDCPA claim to stand, complaint must put defendants on notice as to how they violated the Act) (attached hereto as Exhibit F); Knowles v. I.C. Systems, Inc., 1991 WL 5182 (W.D.N.Y. 1991) (holding that where plaintiff alleged false representations and/or deceptive means were employed to collect or attempt to collect a debt then such a claim amounted to fraud and triggered heightened pleadings requirements as to what means defendant had utilized) (attached hereto as Exhibit G). North Carolina courts have examined jurisprudence under the FDCPA in construing its own debt collection statutes. See, e.g., Reid v. Ayers, 138 N.C. App. 261, 531 S.E.2d 231 (2000).

In her FDCPA claims and claims under the North Carolina statutes, Plaintiff does nothing more than recite the language of the statutes and wholly fails to set forth any actual conduct that could be deemed violative of any of the aforesaid statutes. For instance, Plaintiff alleges that Sterling & King "used false, deceptive or misleading representation or means in connection with

12

the collection of a debt" and engaged in "unfair or unconscionable means to collect or attempt to collect a debt." Plaintiff's Complaint, para. 26. Plaintiff alleges that Sterling & King also attempted to collect a debt by using unfair coercion. Plaintiff's Complaint, para. 32. However, Plaintiff sets forth no facts describing the actual conduct such as who made it, when it occurred, and what happened. Plaintiff therefore fails to even satisfy the requirements of notice pleading. Also, it appears this is nothing more than a generic resuscitation of her allegations in the First Lawsuit. (See Exhibit 2).

As for Plaintiff's claims under the FCRA, Plaintiff attempts to state a cause of action under 28 U.S.C. § 1681s-2(a), which sets forth the obligations of those entities that furnish information to consumer reporting agencies. Plaintiff's Complaint, para. 19. The FCRA is abundantly clear, however, that no private cause of action exists under this subparagraph. § 1681s-2(d). While an individual plaintiff may pursue a claim under § 1681s-2(b), such a claim exists only where 1) the consumer disputes certain information to a consumer reporting agency, 2) the consumer reporting agency, within five business days, notifies the person or entity who furnished the information in dispute, and 3) the furnisher fails to perform a proper investigation. §§ 1681i(a)(2)(A) and 1681s-2(b)(1). While Plaintiff admittedly alleges that Trans Union notified Sterling & King of the dispute, Plaintiff fails to allege that such notification occurred within the five-day statutory requirements. Therefore, Plaintiff has not sufficiently alleged a violation under the FCRA. Because Plaintiff has stated neither a claim under the FDCPA or FCRA, Plaintiff has not properly invoked the subject matter jurisdiction of this Court.

Finally, Plaintiff contends Sterling & King's actions constitute defamation. However, Plaintiff does not allege which of the two series of alleged communications with Trans Union (one on 2004 and one in 2005) constitutes defamation, or whether they both do. This is

13

significant, because, under § 1681t(b)(1)(F), no action for defamation may lie against Sterling & King arising out of actions it took in response to a dispute notification from Trans Union.

As stated hereinabove, Plaintiff's Complaint is inadequate to state valid claims against Sterling & King, and therefore, along with the other reasons cited hereinabove, Plaintiff's Complaint must be dismissed.

## **CONCLUSION**

For the reasons stated herein, the Entry of Default against Sterling & King entered on June 21, 2006 must be set aside and this action dismissed.

This the 1st day of August, 2006.

            POYNER & SPRUILL LLP

            /s/ Joshua B. Durham
            Joshua B. Durham
            N.C. Bar No. 25414; jdurham@poynerspruill.com
            Deborah M. Tyson
            N.C. Bar No. 28134; dtyson@poynerspruill.com
            One Wachovia Center
            301 S. College Street, Suite 2300
            Charlotte, North Carolina 28202
            (704) 342-5250
            ATTORNEYS FOR STERLING & KING, INC.

# CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of August, 2006, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

**Haley M. Jonas**
13777 Ballantyne Corporate Place
Suite 320
Charlotte, NC 28277
704/540-3622
704/540-3623 (fax)
johntaylorlaw@bellsouth.net

**Todd A. King**
Cranfill, Sumner & Hartzog, L.L.P.
227 West Trade St., Ste. 600
Charlotte, NC 28202
704-940-3417
704-332-9994 (fax)
tak@cshlaw.com

**John W. Taylor**
13777 Ballantyne Corporate Place
Suite 320
Charlotte, NC 28277
704-540-3622
704-540-3623 (fax)
johntaylorlaw@bellsouth.net

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

**M. Kasey Ratliff**
Strasburger & Price LLP
2801 Network Blvd, Ste. 600
Frisco, TX 75034
469-287-3900
469-227-6579 (fax)

/s/ Joshua B. Durham
N.C. Bar No. 25414

POYNER & SPRUILL LLP
One Wachovia Center
301 South College Street, Suite 2300
Charlotte, NC 28202
Telephone: (704) 342-5250
Email: jdurham@poyners.com

15

CHARLOTTE/692223-003508947-003117906  Case 3:06-cv-00178-MR-DCK   Document 14   Filed 08/01/06   Page 15 of 15