# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:06-CV-178-MR-DCK

| | |
|---|---|
| RHONDA C. DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND RECOMMENDATION** |
| ) | **AND ORDER** |
| TRANS UNION, LLC, and ) | |
| STERLING AND KING, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant Sterling And King, Inc.'s ... Motion To Dismiss ..." (Document No. 13) and "Defendant Sterling And King, Inc.'s Memorandum Of Law In Support..." (Document No. 14), filed August 1, 2006; Plaintiff's "Motion For Additional Time To Serve Process on Defendant Sterling And King, Inc." (Document No. 16), filed August 11, 2006; and Defendant Sterling And King, Inc.'s "Renewed Motion To Dismiss" (Document No. 24), filed September 5, 2006. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition.

Having carefully considered the papers, the record, and the applicable authority, the undersigned will respectfully recommend that the motions to dismiss be granted in part and denied in part and that the motion for additional time be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On or about March 8, 2006, Rhonda C. Davis ("Plaintiff") filed a "Complaint" (Document No. 1-3) in Mecklenburg County Superior Court against Defendant Trans Union LLC alleging a cause of action for violation of the Fair Credit Reporting Act, as well as multiple causes of action

against Defendant Sterling and King, Inc. brought under: the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2 ("FCRA"); the Fair Debt Collection Practices Act, 15 U.S.C.§ 1692d-f ("FDCPA"); N.C. Gen. Stat. 58-70-90 *et seq.*; defamation; and seeking declaratory judgment and injunctive relief.

Plaintiff contends that "[i]n or about June 2004, the Defendant Sterling and King, Inc. reported to one or more credit reporting agencies, including Defendant Trans Union, that the Plaintiff was indebted on a past due account ... and that the account was in collections." (Complaint at ¶ 8). Plaintiff contends that Defendant Sterling and King knew this information was false, deceptive and misleading and maliciously reported it to injure Plaintiff's credit reputation. Id. Plaintiff alleges that both Defendants failed to conduct reasonable investigations on the false information before passing it on to others, including prospective creditors of Plaintiff. Id. at ¶ 11-14.

On April 13, 2006, Defendant Trans Union ("Trans Union") filed its "...Notice of Removal" (Document No. 1) asserting that removal was proper because Plaintiff's action presented a federal question. On June 20, 2006, Plaintiff filed a "Motion For Entry Of Default Against Sterling And King, Inc." (Document No. 8) alleging its failure to respond or otherwise answer Plaintiff's Complaint in the instant case. The Clerk of Court filed an "Entry Of Default Against Sterling And King, Inc." (Document No. 10) on June 21, 2006.

In the motions currently pending, Defendant Sterling and King, Inc. ("Defendant") disputes whether it ever received timely service of process. Defendant filed its "... Motion To Set Aside Entry Of Default And Motion To Dismiss..." (Document No. 13) on August 1, 2006. Plaintiff filed a "Motion For Additional Time To Serve Process On Defendant Sterling and King, Inc." (Document No. 16) on August 11, 2006. On August 16, 2006, the undersigned by Order (Document No. 18), had the Clerk of Court set aside the entry of default and deferred ruling on the motion to dismiss.

In response to Plaintiff's "attempted service of the complaint," Defendant filed a "Renewed Motion To Dismiss" (Document No. 24) on September 5, 2006.

Defendant's motions to dismiss essentially contend that this case should be dismissed because it has never received valid and effective service and, in the alternative, that Plaintiff has failed to state a claim upon which relief can be granted. For the reasons discussed below, the undersigned agrees in part and disagrees in part.

## II. STANDARD OF REVIEW

A motion to dismiss tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). As recently explained by the Supreme Court:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, ... [f]actual allegations must be enough to raise a right to relief above the speculative level....

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). The Court went on to hold that "[o]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969. The Supreme Court also added in another recent decision that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a

3

>defendant's motion to dismiss, a judge must accept as true all of the
>factual allegations contained in the complaint.

Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

Defendant's "...Motion To Dismiss" (Document No. 13) relies on three main arguments: lack of jurisdiction, insufficient process, and failure to state a claim upon which relief can be granted. The undersigned will analyze each in turn.

**A. Jurisdiction**

This case came before the Court on Defendant Trans Union's "...Notice of Removal" (Document No. 1). Defendant Sterling and King, Inc. asserts that this Court lacks jurisdiction over it because Defendant was not served properly pursuant to Fed.R.Civ.P. 4. This first argument significantly overlaps with Defendant's second argument regarding process and service of process, and will be addressed in detail below. The undersigned notes that the Court has authority to exercise subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

**B. Service of Process**

The Defendant asserts that after Trans Union removed the case to federal court, the Plaintiff

improperly relied on the delivery of the state summons to perfect service, and that such service was "null and void in light of the removal." (Document No. 14 at 11). Defendant argues that Plaintiff lacks sufficient cause for the late service, and therefore, requests that the Court dismiss all counts.

Federal Rule of Civil Procedure 4(m) states, in relevant part, that:

> [i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court . . . shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).[1] In general, the Federal Rules of Civil Procedure allow a court to grant an extension, and state, in pertinent part, that a "court for cause shown may at any time in its discretion (1) with or without a motion or notice order the period enlarged if request therefor is made *before* the expiration of the period originally prescribed . . . . " Fed.R.Civ.P. 6(b) (emphasis added); Motsinger v. Flynt, 119 F.R.D. 373, 375 (M.D.N.C. 1988). In contrast, a party that moves for an extension after the 120-day deadline must demonstrate "a considerably greater showing of cause." Motsinger, at 375.[2] The distinction between when a party moves for an extension carries great

---

[1] In Henderson v. U.S., 517 U.S. 654, 658 n.5 (1996), the Supreme Court suggests, albeit in *dicta,* that a district court may extend the service period even without good cause, leaving the possibility that merely showing cause is sufficient. The Court will not reach this question because the Plaintiff filed a motion to extend the service period before the 120 days expired, and as discussed above, the Plaintiff is only required to show cause, not good cause, for the Court to possess discretion to grant an extension. Motsinger, at 375.

[2] Fed. R. Civ. P. 6(b)(2) provides that if a party files a motion for a time extension after the 120-day deadline, then a court can grant an extension only if the moving party meets the burden of excusable neglect. In the context of Rule 4(m), however, the moving party must meet the burden of good cause rather than excusable neglect. U.S. For Use and Benefit of DeLoss v. Kenner General, Inc., 764 F.2d 707, 711 (9th Cir. 1985). The good cause standard is "as strict or even more stringent than the excusable neglect standard." Motsinger, at 376 (citing Green v. Humphrey Elevator & Truck Co., 816 F.2d 877, 884-885 (3rd Cir. 1987).

5

significance because motions made before the deadline "will be more liberally granted than those which are made after the expiration. Id. (citing Baden v. Craig-Hallum, Inc., 15 F.R.D 582, 585 (D. Minn. 1987)).

In the instant case, the Plaintiff's "Motion For Additional Time To Serve Process..."(Document No. 16) moved to extend the service period before the 120-deadline expired; thus, she must only demonstrate cause to warrant an extension. "Plaintiff's Memorandum ... In Opposition" (Document No. 23) indicates that after obtaining a state summons, the Plaintiff immediately took steps to serve the Defendant. Specifically, she attempted to serve the Plaintiff via a process server three times before Trans Union removed the case, and effectuated service on the Defendant, albeit with a state summons, on April 24, 2006, just over one month after filing the complaint.

Furthermore, after Defendant challenged the validity of the state service 11 days before the 120-day deadline for service of the removed case, Plaintiff continued to exhibit due diligence by obtaining a federal Summons from this Court (Document No. 15), hiring a process server, and filing a motion to extend the service period (Document No. 16). The Court thus finds sufficient cause for an extension because the delayed service had more to do with the difficulty in locating the Defendant than any oversight or neglect by Plaintiff.

The Court finds Defendant's argument that it was Plaintiff's unreasonable reliance on the state service that caused the delay rather than the Plaintiff's inability to locate the Defendant unpersuasive. In the Fourth Circuit, it is unclear whether a party can complete service of a state summons after removal. Compare Motsinger, at 377 n.4 (suggesting, in *dicta*, that a state summons is void upon removal) with Cline v. North Central Life Ins. Co., Civ. No. 2:05-0959, 2006 WL

1391433, at *1 (S.D. W.Va. May 17, 2006) (stating that after removal, a party can complete state service initiated before removal).

Punishing the Plaintiff for its reliance on the state summons would be misplaced viewing the facts in a light most favorable to Plaintiff and considering the apparent precedential ambiguity in the Fourth Circuit. In light of Plaintiff's actions, the Court finds cause for the delay in service. As a result, the undersigned will grant Plaintiff's "Motion For Additional Time..." (Document No. 16) and accordingly, recommend that Defendant's motion to dismiss for insufficient service of process and lack of jurisdiction be denied.

### C. Failure to State a Claim

#### 1. Fair Credit Reporting Act

Plaintiff's Complaint states causes of action for violation of the Fair Credit Reporting Act ("FCRA") against both Defendants. The first cause of action is brought against Trans Union and is not subject to this discussion. In the second cause of action, Plaintiff specifically alleges that Defendant violated 15 U.S.C. § 1681s-2(b) when it failed to reasonably investigate Plaintiff's disputed debt.

In general, the FCRA requires consumer reporting agencies to adopt reasonable reporting procedures that are fair and equitable to the consumer with regard to confidentiality, accuracy, relevancy, and proper utilization of the information. See 15 U.S.C. § 1681(b). The FCRA also extends a duty of reasonable conduct to any business and person who furnishes information to credit reporting agencies. 15 U.S.C. § 1681s-2. The conduct that a furnisher of credit information must adhere to is divided into two subsections: 15 U.S.C. § 1681s-2(a) and 15 U.S.C. § 1681s-2(b).

Subsection 1681s-2(a) establishes, among other things, that a furnisher of credit information

7

must provide accurate information, and ensure that the information is correct and updated. Upon notice from a credit reporting agency that a consumer has disputed a reported debt, § 1681s-2(b) triggers additional responsibilities. See 15 U.S.C. §§ 1681s-2(b)(1)(A)-(E).

The Fourth Circuit has held that upon such notice, § 1681s-2(b)(1)(A) requires furnishers of credit information "to conduct a *reasonable investigation* of their records to determine whether the disputed information can be verified." Johnson v. MBNA American Bank, N.A., 357 F.3d 426, 431 (4th Cir. 2004) (emphasis added). The Court in Johnson also notes that "[i]t would make little sense to conclude that, in creating a system intended to give consumers a means to dispute - and, ultimately, correct - inaccurate information on their credit reports, Congress used the term 'investigation' to include superficial, *un*reasonable inquiries by creditors." Id. at 430-31 (emphasis in original). Accordingly, if a furnisher of credit information fails to reasonably investigate the disputed information, the FCRA provides a private right of action for consumers.[3] See 15 U.S.C. §§ 1681n-o and 1681s-2(c); see also, Akalwadi v. Risk Mgmt. Alternatives, Inc., 336 F. Supp. 2d 492, 509-510 (D. Md. 2004) (finding a private cause of action under § 1681s-2(b)); DiMezza v. First USA Bank, Inc., 103 F. Supp. 2d 1296, 1300 (D. N.M. 2000) ("the plain language of the Fair Credit Reporting Act compels the conclusion that there is a private right of action for consumers to enforce the investigation and reporting duties imposed on furnishers of information.").

In the instant complaint, the allegations relate to § 1681s-2(b) of the FCRA and state that Defendant is a furnisher of credit information (Complaint at ¶ 19); Plaintiff is a consumer (Complaint at ¶ 18); Defendant furnished false information that attributed a $2,330.00 debt to the

---

[3]Whether a furnisher of information conducted a reasonable investigation is a question of fact left to the jury. Bruce v. First U.S.A. Bank, N.A.,103 F. Supp. 2d 1135,1143 (E.D. Mo. 2000) (citing Cushman v. Trans Union Corp., 115 F.3d 220, 224-225 (3rd Cir. 1997).

Plaintiff in June 2004 (Complaint at ¶ 8); Trans Union notified Defendant that Plaintiff had contested the debt in 2005 (Complaint at ¶ 11); Defendant disregarded Trans Union's notice (Complaint at ¶ 11); Defendant willfully or negligently verified the information without first conducting a reasonable investigation (Complaint at ¶¶ 11 and 21); and these actions, as well as others, violated provisions under § 1681s-2 (Complaint at ¶¶ 21-22).

Defendant does not contest the allegations above, but instead argues that dismissal is appropriate because the Complaint fails to allege that Trans Union notified the Defendant within five days of receiving notice of the dispute, as required under §1681s-2(b)(1).[4] The Defendant, however, has not provided any authority, nor has the Court found any, to support the argument that a complaint is fatally deficient under the FCRA if it fails to allege that a furnisher of credit information was contacted within five days of a credit reporting agency receiving notice of a consumer's dispute. Without the benefit of discovery at the pleading stage of litigation, the Plaintiff would presumably lack the knowledge of whether Defendant received notice within five days, and adopting such a burdensome requirement would be contrary to the goals of notice pleadings. Taking Plaintiff's allegations as true, the Court finds that the Complaint provides enough detail of the Defendant's prohibited conduct to notify the Defendant of the grounds on which the Plaintiff's FCRA claim rests. Accordingly, the undersigned will recommend Defendant's motion to dismiss Plaintiff's second cause of action be denied.

### 2. **Fair Debt Collections Practices Act**

---

[4] Section 1681s-2(b)(1) specifically states that additional duties of furnishers of credit information begin "after receiving notice pursuant to section 1681i(a)(2) . . . . " Pursuant to § 1681i(a)(2), notice of the disputed information is required "[b]efore the expiration of the 5-business-day period beginning on the date on which the consumer reporting agency receives notice of a dispute from any consumer . . . . "

In its third cause of action, Plaintiff alleges Defendant attempted to collect the disputed debt when it falsely reported credit information to Trans Union in violation of the Fair Debt Collection Practices Act ("FDCPA"). (Complaint at ¶¶ 8-9 and 29-32). In response, the Defendant argues that the Complaint's allegations are conclusory and fail to set forth any particular conduct that violates the FDCPA. (Document No. 14 at 12).

In general, the purpose of the FDCPA is to regulate abusive and unfair debt collection practices, ensure consumer protection, encourage fair competition between debt collectors, and provide a remedy for consumers victimized by unscrupulous debt collection practices. See 15 U.S.C. § 1692 et eq. The FDCPA traditionally applies to debt collectors, and defines "debt collector" as "any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692a(6).[5]

Debt collectors utilize a number of different debt collection tactics, but the "threshold requirement for application of the [FDCPA] is that prohibited practices are used in an attempt to collect a 'debt.'" Mabe v. G.C. Servs. Ltd. P'ship, 32 F.3d 86, 88 (4th Cir. 1994); see also, 15 U.S.C. § 1692 et se; Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993) (stating that the FDCPA's list of prohibited debt collection tactics is non-exhaustive). Although the FDCPA potentially prohibits a number of debt collection procedures, [t]he FDCPA is a strict liability statute and a consumer only has to prove one violation to trigger liability." Akalwadi v. Risk Mgt Alternatives, Inc., 336 F. Supp. 492, 500 (D. Md. 2004) (citing Spencer v. Henderson-Webb, Inc., 81 F. Supp. 2d 582, 590 (D. Md. 1999).

---

[5]To bring a valid FDCPA, the Defendant must be a "debt collector" and the Plaintiff must be a "consumer" pursuant to 15 U.S.C. § 1692a. It is undisputed that the parties meet this criteria.

In the instant Complaint, Plaintiff alleges that Defendant violated § 1692d, § 1692e, and § 1692f in connection with the collection of the disputed debt. (Complaint at ¶ 26(a)-(c)). Most relevant to the instant case, § 1692e prohibits debt collectors from "using false, deceptive, and misleading representation or means in connection with the collection of a debt." Section 1692e(8) of the FDCPA specifically prohibits debt collectors from "communicating or threatening to communicate to any person credit information which is known or which should be known to be false." Under the FDCPA, "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

The undersigned finds no indication that furnishing credit information to credit reporting agencies is not a form of "communication" under § 1692a(2), and notes that debt collectors are ordinarily permitted to "communicate" with reporting agencies.[6] Nevertheless, "a debt collector's reporting of a consumer debt to a credit reporting agency would be covered by the FDCPA § 1692e if the communication is false, deceptive, or misleading." Akalwaldi, at 503; Sullivan v. Equifax, No. Civ.A. 01-4336, 2002 WL 799856, at *4 (April 19, 2002 E.D. Pa.) ("Because reporting a debt to a credit reporting agency can be seen as a communication in connection with the collection of a debt, the reporting of such a debt . . . can subject a debt collector to liability under the FCDPA.").

For the purposes of pleading, Fed.R.Civ.P. 9(b) provides that "malice, intent, *knowledge*, and other conditions of the mind may be averred generally." (emphasis added). In the absence of a heightened pleading requirement, the Plaintiff's allegations that "[t]he Defendant Sterling and King knew that the . . . information was false at the time it was reported" (Complaint at ¶ 8), and that "the

---

[6]Section 1692c(b) of the FDCPA provides that "a debt collector may not communicate, in connection with the collection of any debt, with any person *other than* the consumer, his attorney, [or] *a consumer reporting agency* ." (emphasis added).

11

Defendant Sterling and King failed or refused to conduct a reasonable investigation of the Plaintiff's dispute prior to verifying the false information" (Complaint at ¶ 11) are sufficient to indicate that the Defendant had knowledge or should have knowledge that it reported false information.

Thus, the undersigned finds that the Complaint sufficiently alleges Defendant violated of the FDCPA when it falsely reported, or falsely "communicated" with Trans Union, that Plaintiff owed $2,330.00.[7] Accordingly, the undersigned will recommend that Defendant's motion to dismiss Plaintiff's third cause of action be denied.

### 3. Prohibited Practices by Collection Agencies

Next, in her fourth cause of action, Plaintiff alleges Defendant violated N.C. Gen. Stat. § 58-70 *et al* (Prohibited Practices by Collection Agencies)and N.C. Gen. Stat. § 75-1.1 (Unfair and Deceptive Trade Practices). Before reaching the merits of Plaintiff's claims in this cause of action, the Court must consider whether the FCRA purports to preempt these state claims.

The FCRA contains two preemption provisions: 15 U.S.C. § 1681t(b)(1)(F) and 15 U.S.C. § 1681h(e). The first, § 1681h(e), provides:

> no consumer can bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer.

In § 1681t(b)(1)(F), which Congress added to the FCRA in 1996, it states "[n]o requirement or prohibition may be imposed under the laws of any state – (1) with respect to any subject matter

---

[7] A debt collector can ultimately avoid liability under the FDCPA "if [it] shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance procedures reasonably adapted to avoid such error." 15 U.S.C. § 1692k(c).

12

regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer agencies . . . ."

Since Congress included § 1681t(b) in 1996, districts courts throughout the country have split on how the FCRA's preemption provisions should be interpreted with respect to each other and state laws. Three different approaches have developed analyzing the relationship between §1681t(b) and §1681h(e): total preemption, temporal preemption, and statutory preemption. See Barnhill v. Bank of America, N.A., 378 F. Supp. 2d 696 (D. S.C. 2005).

The total preemption approach posits that § 1681t(b) completely repealed § 1681h(e), and that therefore § 1681t(b) preempts all state laws related to duties of furnishers of credit information. Id. at 700; see also, Hasvold v. First USA Bank, N.A., 194 F. Supp. 2d 1228, 1238-39 (D. Wyo. 2002) (adopting the total preemption approach); Jaramillo v. Experian Info. Solutions, Inc., 155 F. Supp. 2d 356, 361-62 (E.D. Pa. 2001) (same).

The temporal approach "reconciles §§ 1681h(e) and 1681t by focusing on when the furnisher of information received notice that the information provided was inaccurate or disputed." Barnhill, 378 F. Supp. 2d at 701. Pursuant to the temporal approach, § 1681t(b) applies after a furnisher of information receives notice of the dispute, whereas § 1681h(e) applies before such notice is received. Id.; see also, Woltersdorf v. Pentagon Fed. Credit Union, 320 F. Supp. 2d 1222 (N.D. Ala. 2004) (adopting the temporal approach); Bank One, N.A. v. Colley v. First U.S.A. Bank, N.A., 294 F. Supp. 2d 864, 869 (M.D. La. 2003) (same).

Lastly, the statutory approach posits that § 1681h(e) preempts certain common law claims, whereas 1681t(b) works concurrently to preempt appropriate statutory claims. Barnhill, 378 F. Supp.

2d at 703. The Fourth Circuit has not provided a definitive ruling on this matter[8], but the growing consensus in district courts in the Fourth Circuit is to adopt the statutory approach. Id. at 703-704 (adopting the statutory approach); Joiner v. Revco Discount Drug Centers, Inc., 467 F. Supp. 2d 508, 513 (W.D.N.C. 2006) (same); Jeffery v. Trans Union, LLC, 273 F. Supp. 2d 725, 728 (E.D. Va. 2003) (same). The statutory approach is further "bolstered by the fact that Congress amended both § 1681t and § 1681h(e) in the same year, supporting the inference that Congress intended the two sections to work together." Barnhill, 378 F. Supp.2d at 703 n.2. Accordingly, this Court will follow the statutory approach.

In its fourth cause of action, Plaintiff alleges Defendant violated N.C. Gen. Stat. §§ 58-70 *et seq*. and 75-1.1. (Complaint at ¶¶ 32 - 33). Specifically, she alleges Defendant coerced, oppressed, and fraudulently misled while seeking to collect the disputed debt. (Complaint at ¶ 32). Section 1681t(b) is implicated because the fourth cause of action alleges statutory offenses "relating to the responsibilities of persons who furnish information to consumer reporting agencies"-- namely, Defendant. 15 U.S.C. § 1681t(b)(1)(F).

This Court has recently held that § 1681t(b)(1)(F) would preempt such claims, Poarch v. American General Financial Services, Inc., No. 3:06CV412, 2007 WL 274807, at *7 (W.D.N.C. January 25, 2007), and other courts in the Fourth Circuit have reached similar conclusions. See Spitzer v. Trans Union, LLC, 140 F. Supp. 2d 562 (E.D.N.C. 2000) aff'd 3 Fed. Appx. 54 (4th Cir. 2001); Joiner v. Revco Discount Drug Centers, Inc., 467 F. Supp. 2d 508 (W.D.N.C. 2006).

Based on these precedents, the undersigned finds that the FCRA preempts the state law

---

[8]In an unpublished opinion, the Fourth Circuit suggests that § 1681t(b) did not repeal § 1681h(e). Beattie v. Nations Credit Financial Services Corp., 69 Fed. Appx. 585, 588 (4th Cir. 2003) (unpublished).

claims contained in Plaintiff's fourth cause of action. Accordingly, Plaintiff's Complaint as it pertains to North Carolina statutory causes of action is legally deficient, and the undersigned will recommend that Defendant's motion to dismiss the claims under the fourth cause action be granted.

### 4. Defamation

In Plaintiff's fifth cause of action, it is alleged that Defendant's false reporting of credit information to one or more credit reporting agencies constituted defamation under North Carolina common law. Adopting the statutory approach described above, the undersigned notes that a statutory claim is not at issue and therefore looks to 15 U.S.C. § 1681h(e). See Jeffery v. Trans Union, LLC, 273 F.Supp. 2d 725, 728 (E.D. Va. 2003) (applying the statutory approach and finding "that Section 1681h(e) -- and not Section 1681t(b)(1)(F) -- applies to the defamation claim."). As discussed above, the FCRA preempts defamation claims against furnishers of credit information "*except as to false information furnished with malice or willful intent to injure*." 15 U.S.C. § 1681h(e) (emphasis added).

The Complaint in the instant case specifically alleges that the Defendant reported the false information "willfully, maliciously, and with an intent to injure the Plaintiff." (Complaint at ¶ 39). The Complaint also states that Defendant "maliciously reported the false information with the intent to injure the credit reputation of the Plaintiff." (Complaint at ¶ 8). For pleadings, "malice, intent, knowledge, and other conditions may be averred generally." Fed.R.Civ.P. 9(b). Therefore, the undersigned finds that the general allegations of willfulness and maliciousness in paragraphs 8 and 39 are sufficient to avoid preemption under § 1681h(e) at this stage of the litigation and will recommend that Defendant's motion to dismiss this claim be denied.

### 5. Claims for Declaratory and Injunctive Relief

Plaintiff's Complaint asserts causes of action for declaratory judgment and injunctive relief. Inasmuch as the parties have failed to address these claims in their motions and briefs, the undersigned will likewise decline to make any recommendation as to disposition of these claims.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's "Motion For Additional Time To Serve Process on Defendant Sterling And King, Inc." (Document No. 16) is **GRANTED**.  Plaintiff shall have until **November 16, 2007** to serve the Summons and Complaint in this matter on Defendant Sterling and King, Inc.

## V.  RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendant Sterling And King, Inc.'s ... Motion To Dismiss ..." (Document No. 13) and "Renewed Motion To Dismiss" (Document No. 24) be **GRANTED IN PART** and **DENIED IN PART**; Defendant's motions should be **GRANTED** as to Plaintiff's fourth cause of action and **DENIED** as to the second, third, and fifth causes of action, as well as to Defendant's arguments for dismissal based on lack of jurisdiction and insufficient process.

## VI.  NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this memorandum must be filed within ten (10) days after service of same.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989); <u>United States v. Rice</u>, 741 F. Supp. 101, 102 (W.D. N.C. 1990).  Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to <u>de novo</u> review by the district court, <u>Snyder</u>, 889 F.2d at 1365, and may preclude the parties from

raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation And Order to counsel for the parties and the Honorable Martin K. Reidinger.

**SO ORDERED AND RECOMMENDED**.

Signed: November 1, 2007

David C. Keesler
United States Magistrate Judge